WALLACE RUMSEY BOGGESS

*v.*

IRA E. BRIERS, *Warden*

(No. 10270)

Submitted April 26, 1950. Decided May 9, 1950.

*J. Raymond Gordon,* for petitioner.

*William C. Marland,* Attorney General, and *Londo H. Brown,* Assistant Attorney General, for respondent.

Fox, Judge:

At the June term, 1949, of the Common Pleas Court of Cabell County, the petitioner, Wallace Rumsey Boggess, was indicted for a felony under Code, 61-2-9, covering the offenses of malicious and unlawful wounding. On July 7, 1949, he was arraigned in said court on the charge aforesaid, and entered a plea of guilty to unlawful wounding, being represented at the time by counsel of his own choosing. Sentence on such plea was deferred until August 5, 1949, when petitioner was sentenced to serve a term of not less than one and not more than five years in the penitentiary of this State. He was subsequently confined, under said sentence, in the Medium Security Prison at Huttonsville, West Virginia.

On March 27, 1950, he presented to this Court his petition for a writ of habeas corpus *ad subjiciendum* requiring the respondent, Warden of said Medium Security Prison,

to appear and show cause why the said petitioner was being detained by him. We awarded the writ and made the same returnable on April 11, 1950, on which date the matter was continued to permit the taking of proof. On April 25, 1950, the proceeding was submitted for decision.

We awarded the said writ on the petition so filed which, among other things, made various charges pertaining to the trial of the said petitioner, in the Common Pleas Court of Cabell County, and the sentence imposed by said court. Such charges are in the words and figures following:

"Your petitioner further represents unto Your Honors that while he was held in the Cabell County Jail awaiting trial, he was adjudicated by Fred Ware, County Clerk of Cabell County, of being of unsound mind and insane, and appointed for him a Committee, Bessie Boggess, his wife, and notice of the appointment of Committee is hereto attached and marked for identification 'Boggess Exhibit No. 3'.

"* * * that Edward H. Green, Prosecuting Attorney of Cabell County, had full knowledge of said circumstances, and he knew and the Honorable H. Clay Warth, Judge of said Court, knew and well knew, at the time that the petitioner entered an illegal and alleged plea of guilty of the unlawful wounding and that he was then adjudicated and incapable of taking care of any business affairs and his affairs was under the management of his Committee.

"Your petitioner respectfully represents unto Your Honors that at the time he entered the plea to unlawful wounding, mentioned and described, he was then adjudicated of unsound mind by the County Clerk of Cabell County, Fred Ware, as appears from the aforegoing exhibits. At the time he was tried and sentenced to the penitentiary, to-wit, the 5th day of August, 1949, he was adjudicated of unsound mind, and said adjudication was never removed, and while his mind was bad and he had been so adjudicated by the authorities aforesaid, he was put on trial and required to defend himself, although the Judge of said Court,

the Prosecuting Attorney, and every official had full knowledge of his condition and the aforegoing facts and circumstances.* * *"

These charges, involving as they do the integrity and fairness of the Common Pleas Court of Cabell County, the prosecuting attorney of that county, and with other allegations which include charges that impugn the professional honor of counsel who represented petitioner in said trial, are not warranted by any showing in the record before us, and should not have been made. In the brief filed by counsel for petitioner, it is asserted that petitioner was adjudicated an insane person by the Mental Hygiene Commission, of Cabell County, which assertion is not supported by the record. What the record does show is the following:

Petitioner was indicted as stated above, and employed counsel to defend him. Counsel appeared in the Common Pleas Court of Cabell County and raised a question of the then insanity of petitioner. The judge of said court called the petitioner before him and examined him, and apparently indicated to his counsel that he considered him to be a sane man. Whereupon, at the instance of his counsel, a hearing was had before the said court continuing as late as June 21, 1949, in which evidence bearing upon petitioner's supposed insanity at that time was offered. The court, after hearing such evidence, was still of the opinion that petitioner was sane. A motion was then made to place petitioner in the Huntington State Hospital, Huntington, West Virginia, to be examined by the psychiatrists practicing in said institution. He was placed in said institution and remained there for approximately two weeks, and was under the observation of Edward F. Reasor and Vincent J. Daly, whose ability and competency as psychiatrists are not questioned in this proceeding. Each of them reported in writing that petitioner was then sane. It is assumed that this proceeding was taken under Code, 62-3-9, as amended by Chapter 62, Acts of the Legislature, 1947. The petitioner was arraigned for trial on July 7, 1949, and, after the indictment was read to him, a plea of not

guilty was entered, and a jury impaneled to try the issue thus raised. After this development, the petitioner with his own counsel, and perhaps other interested persons, went into a room adjoining the courtroom, where they remained for sometime, and, on returning to the courtroom, petitioner, by his counsel, asked leave to withdraw his said plea of not guilty, and to enter a plea of guilty of unlawful wounding, charged in the said indictment. The withdrawal of the plea and the entry of the plea of guilty was agreed to by the prosecuting attorney and permitted by the court, and, as stated above, the petitioner, in person, then entered his plea of guilty to the offense of unlawful wounding charged in the indictment.

In the meantime, and very shortly after his arrest for the offense charged against him, counsel who had been employed to defend petitioner, went to the office of the Clerk of the County Court of Cabell County, in the company of petitioner's wife, and on her motion, and after notice to petitioner that such a motion would be made, she was appointed his committee to attend to his business and personal affairs. Whereupon, she gave bond in the penalty of $2,000.00, and acted as such committee until the 4th day of October, 1949, when, subject to a settlement of her accounts, she was relieved of her trust, and the Sheriff of Cabell County was substituted as the committee for petitioner. There is no showing, and in truth the showing is to the contrary, that any inquiry as to the mental state of petitioner was made by the Clerk of the County Court of Cabell County; and certainly there was no adjudication of petitioner's insanity by the County Court of Cabell County or its Clerk, or by the Mental Hygiene Commission of said county, or by the Common Pleas Court of said county, if under a liberal construction of the statute, the right to adjudicate such insanity was vested in such Common Pleas Court.

The appointment of his wife as his committee did not, in the circumstances of this case, amount to an adjudication of his insanity. It is well known that committees are appointed for individuals who are not insane, but who are,

nevertheless, for one reason or another, unable to look after their affairs, either by reason of confinement in prison, old age or other physical or mental infirmaries. Under our statute, the ordinary method of securing an adjudication of insanity is to require an appearance of the person charged with being insane before the Mental Hygiene Commission of the county of which the supposed insane person resides. Code, 27-3. Under the Constitution, the powers vested in such Commission do not deprive the County Court of the right to appoint a committee, which, by inference, gives such County Court the right to make an adjudication of insanity. Code, 27-9-1. *State ex rel. Nutter* v. *Mace,* 130 W. Va. 676, 44 S. E. (2d) 851. In certain instances, Circuit Courts may make an adjudication of insanity. Code, 27-3-13, as amended by Chapter 78, Acts of the Legislature, 1949. However this may be, the finding of mental incapacity or insanity by a competent tribunal is not necessary to justify the appointment of a committee by the County Court, where a proper showing of the need for a committee is made. See *Doak, Administrator* v. *Smith,* 93 W. Va. 133, 116 S. E. 61; *Moore* v. *Coleman,* 126 W. Va. 815, 30 S. E. (2d) 333; *State* v. *Mace, supra; Hunt* v. *Allen,* 131 W. Va. 627, 53 S. E. (2d) 509.

It is true, as alleged by petitioner, that his counsel were of the opinion that petitioner was insane, and that his case should not be tried while he was in that state of mind. This is evidenced by the fact that at the first opportunity they brought the matter of his mental state to the attention of the Common Pleas Court, presented evidence to support the contention that he was insane, and when they were unsuccessful in making their point, then requested that he be sent to the Huntington State Hospital for observation. There is also testimony of the wife of petitioner, taken by deposition in this proceeding, to the effect that from about November, 1948, and up to the time of the commission of the crime charged against him and thereafter, he was in a highly nervous state and abnormal in his actions and conduct generally. There is the testimony of other lay witnesses to the effect that they believed him to be insane. There was presented to the Common Pleas

Court, in the hearing before it, aforesaid, the statement of a psychiatrist, C. G. Polan, in which he summarizes his conclusions as follows:

"It is my feeling that this patient probably has organic disease of the central nervous system. The disease may be of syphilitic origin. He is verbose, circumstantial, and shows grandiose and paranoid ideas. His examination is quite suggestive of deterioration."

This statement is dated June 20, 1949, and addressed to counsel for petitioner.

All these facts being clearly shown, we are unable to see wherein the petitioner was deprived of any constitutional right which would warrant his release from the imprisonment aforesaid. As we view the case, the Judge of the Common Pleas Court of Cabell County was meticulous in according to petitioner a fair hearing on every question raised by him. Being of the opinion that petitioner was sane, and the petitioner having benefit of counsel of his own choosing, the court accepted the voluntary plea of guilty of unlawful wounding. Admittedly, the judge of said court considered, and probably discussed with counsel, and perhaps with petitioner, the idea of granting probation; but the contention that there was ever any agreement between the court and counsel that if the plea of guilty of unlawful wounding would be entered probation would be granted, is not supported by the evidence. Aside from this, this Court cannot find, in the face of the evidence in this case, that any such hope was held out to petitioner in order to secure the confession upon which his sentence was based.

Counsel for petitioner in the trial on the indictment, in the Court of Common Pleas of Cabell County, are criticized because they permitted petitioner to enter the plea of guilty aforesaid; and it is contended that the petitioner was not advised of the consequences of the plea, in that the court did not advise him of the punishment which the plea might carry. Furthermore, it is contended that petitioner was under the impression that he was confessing to

a misdemeanor. In the first place, no duty rested upon the Common Pleas Court to advise him of the possible punishment his plea of guilty might entail. Whatever may be the rule in some courts, there is no such requirement in the courts of this State. Petitioner had himself practiced law in the State of Kentucky for several years, and was, of course, not without some information as to legal procedure. It is unbelievable that being a lawyer, and having at his side attorneys supposed to be familiar with the laws of this State, he did not know when he made the plea what the possible punishment might be. One of counsel who testified in the case stated positively that petitioner was given full and complete information as to the consequences of his plea, and it is denied that it was ever represented to him that he was pleading to a misdemeanor.

The petitioner's case is finally made to rest upon the conduct of his counsel in the trial court. It is said that they should not have permitted the plea of guilty to be entered, and should have tried the question of petitioner's insanity before a jury. This might have been done in two ways: First, by having the question of his insanity adjudicated at the time of the trial, an old common law procedure. *Gruber* v. *State,* 3 W. Va. 699; *State* v. *Harrison,* 36 W. Va. 729, 15 S. E. 982. Whether such right was available was largely within the discretion of the court. Second, to test the insanity of the defendant at the time of the commission of the offense under a plea of not guilty, which he could do. *Gruber* v. *State, supra; State* v. *Fugate,* 103 W. Va. 653, 138 S. E. 318; *State* v. *Beckner,* 118 W. Va. 430, 190 S. E. 693. The evidence clearly shows that there was at that time some hope or expectation that the Common Pleas Court might place petitioner under probation, and subsequent to the confession made on July 7, 1949, other counsel was employed in an effort to bring about petitioner's probation. At the time the case was called for trial, petitioner's counsel were confronted with the statement of the two psychiatrists who had observed petitioner for the preceding two weeks, and who, presumably, were prepared to testify that he was sane, which left little hope that the trial court would submit the question of his then

insanity to a jury. The record does not disclose what contentions were made, or could be made, with respect to petitioner's mental condition at the time of the offense charged against him. That was a question separate and distinct from the inquiry made in the trial court. Whether such a defense should or could have been made depended on the many circumstances which arise in the defense to a charge in a criminal case.

We find no breach of professional duty involved in counsel advising petitioner to confess to the charge of unlawful wounding contained in the indictment. The record indicates that there could have been no substantial defense made to the charge contained in the said indictment, other than the defense of insanity, and this feature we have discussed. Counsel were confronted with a difficult situation, and there is nothing in the record before us which indicates that they acted otherwise than in good faith, or that they were not actuated by a desire to do what they believed to be for the best interest of their client. Even if they made a mistake, that would not warrant the release of the petitioner.

The writ of habeas corpus is of ancient origin, protected by both the Federal and State Constitutions, and is used generally to determine the legality of restraint under which a person is held by the decree or judgment of a court, or otherwise. We need not take time to enlarge upon the nature and purposes of the writ, nor its importance as a safeguard against the invasion of the legal rights of all classes of people. It is quite frequently used in an effort to secure the release of persons subjected to imprisonment by the courts of the land, particularly in cases where it is alleged that some constitutional right has been violated. However, "Habeas Corpus is not available to procure the discharge from custody of one accused and held to answer for a crime, until the court having jurisdiction has by some affirmative action denied him some legal or constitutional right, and when the record shows that any order or judgment other than discharge from further prosecution would be absolutely void."

9 Michie's Jurisprudence 310. It cannot be doubted that if, at the time petitioner was arraigned for trial in the Common Pleas Court of Cabell County, he had been legally adjudicated to be insane, and had not been released from the effect of such adjudication, his trial by said court on the charge of felony there lodged against him would have been improper, illegal, and we would not hesitate to order his discharge from the imprisonment imposed, because the action of the court in imposing a sentence of imprisonment should be treated as absolutely null and void. But, in the case at bar, there is no showing of an adjudication of insanity. The clear showing is that the matter of his alleged insanity was fairly and judicially determined by the Common Pleas Court of Cabell County, and not until said court was satisfied that the petitioner was sane, was the plea of guilty of unlawful wounding accepted. The fact that others, including petitioner's counsel, may have believed petitioner to be insane at that time, furnishes no grounds upon which this Court would be warranted in declaring the judgment of the trial court to be null and void. The situation confronting counsel for the petitioner in the court below was not an unusual one. The difficulties in the way of having petitioner declared insane were almost, if not entirely, insuperable. In the circumstances, counsel cannot be justly criticized for advising petitioner to enter the plea of guilty of unlawful wounding. Whether a different course would have brought about a different result we do not know. The mere fact that a different course might have brought about a different result does not justify us in declaring the whole proceeding null and void.

On the whole, we are of the opinion to discharge the writ of habeas corpus *ad subjiciendum* heretofore awarded, and to remand the petitioner to the custody of the respondent, the Warden of the Medium Security Prison, Huttonsville, West Virginia.

*Writ discharged;*
*prisoner remanded.*