18572

Joe THOMPSON, Appellant, v. The STATE of South Carolina et al., Respondents

(151 S. E. (2d) 221)

476

*Joseph D. Sapp, Esq.,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Edward B. Latimer, Assistant Attorney General,* of Columbia, *for Respondents,*

November 14, 1966.

Moss, Chief Justice.

This is an appeal from an order of The Honorable John Grimball, Resident Judge of the Fifth Judicial Circuit, discharging a writ of *habeas corpus*.

The appellant is an inmate of the South Carolina Penitentiary, serving a life sentence imposed upon him by The Honorable Steve C. Griffith, Presiding Judge, at the 1964 September term of the Court of General Sessions for Fairfield County, after the appellant pled guilty to an indictment that charged him with murder. The appellant not only signed a plea of guilty to murder with a recommendation to the mercy of the court but a jury returned a like verdict. The appellant was represented by retained counsel at the time of his trial and in connection with his guilty plea.

The appellant, on March 3, 1965, filed his petition for a writ of *habeas corpus* in the Court of Common Pleas for Richland County, alleging that his imprisonment was contrary to law on the following grounds:

1. That one juror who found him guilty was a second cousin of the deceased.

2. That he was advised by his attorney to plead guilty to murder and receive a sentence of four or five years.

3. That he was arrested and questioned by police without being in the presence of his attorney to aid him, even though demand was made.

4. That he was not promptly arraigned.

5. That three "false witnesses" testified against him.

6. That the court refused to let him "talk" at the trial.

7. That he was advised at his trial that if he pled innocent he would be sentenced to death.

8. That he was not advised by either his counsel or the court of the charge against him and was not given a copy of the indictment.

9. That one witness perjured himself by testifying in conflict with his previous testimony given at the inquest and that appellant's attorney refused to cross examine such witness.

10. That he was deprived of certain rights under Title 18, Section 242, of the 1962 Code of Laws. (Apparently this reference was to Title 18, Section 242, U. S. C. A.)

Upon this petition the circuit judge issued the writ of *habeas corpus;* and the respondents having made return thereto alleging that the appellant had been convicted and sentenced in accordance with due process of law, the matter was heard in the Circuit Court on July 15, 1965, and October 29, 1965. The appellant was present and represented by court appointed counsel, other than counsel who represented him when he pled guilty and was sentenced. By his order of December 6, 1965, the circuit judge found that the grounds upon which the appellant alleged his imprisonment to be contrary to law were without merit and he discharged the writ of *habeas corpus* and remanded the appellant to custody. This appeal followed. The appellant, by his exceptions, raises two questions: (1) Is there a duty on a trial judge in South Carolina to question one accused of a criminal act in order to determine whether or not the accused understands the consequences of his plea of guilty before the court accepts such plea, and (2) Was the petitioner accorded due process of law at the time he entered his plea of guilty?

It appears from the record in this case that the appellant was indicted for the crime of murder by the Fairfield County Court of General Sessions at the 1964 June term thereof. This case came on for trial before The Honorable Steve C. Griffith, Presiding Judge, and a jury, on September 10, 1964, the appellant being represented by retained counsel. Upon the arraignment of the appellant he entered a plea of not guilty. The State completed the presentation of its case against appellant on September 10, 1964. At the close of such testimony the appellant made a motion, which was refused, to reduce the charge against him from that of murder to

manslaughter. After the State had completed its case against the appellant, the court adjourned until September 11, 1964. During this period, the retained counsel entered into negotiations with the Solicitor concerning a possible guilty plea. The appellant conferred with his retained attorney and other counsel who had been brought in for consultation on this matter. Upon the convening of court on September 11, 1964, the appellant, through his counsel, asked to be allowed to enter a plea of guilty to the offense of murder with recommendation to the mercy of the court. The plea as agreed to by the State and by the court was signed by the appellant and the jury that had been impaneled to try the case was directed to and did return a verdict in accordance with said agreement and plea. The trial judge, pursuant to Section 16–52 and Section 17-553.4 of the Code, sentenced the appellant to imprisonment for the period of his whole lifetime.

At the hearing before Judge Grimball the appellant testified that he was present and heard all of the testimony given in behalf of the State. The next morning the appellant entered a plea of guilty to murder with a recommendation to mercy assigning as his reason therefor that his attorneys "told me if I didn't plead guilty I would get the electric chair". He admits that prior to the entry of his plea of guilty and as he went to the desk to sign such that Judge Griffith asked him "do you know what you are doing?", and he answered "Yes". When asked why he gave this answer he stated that his counsel had told him to give this response. He further testified that he did not know what sentence he was going to get. The record shows that the appellant was in court with his attorney as the trial judge instructed the jury foreman to sign a consent verdict finding him guilty of murder with a recommendation to mercy. He was also present when the judge stated that the sentence was a mandatory life sentence. He made no objection to what was being done. He admitted that his attorneys advised him to plead guilty to murder with a recommendation to mercy because it was their opinion if he did not do so he would get the electric chair. He denied that he knew that the death penalty was the punishment if

he was found guilty of murder without a recommendation to mercy and also denied that his counsel told him that if he entered a plea of guilty to murder with a recommendation to mercy he would get a life sentence. However, on cross examination, he did admit that his attorneys told him that if the jury brought in a verdict of guilty of murder he would be sentenced to die in the electric chair.

The record shows that when the appellant entered a plea of guilty to murder with a recommendation to the mercy of the court Judge Griffith instructed the jury to return such a verdict. Thereafter, he announced a life sentence in conformity with the verdict. The appellant denied that this took place and that he only knew he had a life sentence when he was entered as a prisoner in the penitentiary. This testimony contradicts the transcript of record in this case.

The attorney for the appellant appeared as a witness. He testified that after the State had completed its case against the appellant that he was convinced that the only two decisions the jury could render would be murder or murder with a recommendation to mercy. The attorney told the appellant that if the Solicitor would allow him to do so he strongly recommended that he enter a plea of guilty to murder with a recommendation to mercy. He further testified that he called into consultation another attorney who had defended the appellant at a previous term of the court for another crime. After these attorneys had considered the testimony against the appellant in this case it was their joint recommendation and advice that he enter a plea of guilty to murder with a recommendation to mercy. This attorney testified that he explained the charges contained in the indictment to the appellant and explained the possible sentences that he could receive if convicted. He then testified that the decision "to enter that guilty plea was Joe Thompson's and Joe Thompson's alone" and such plea was voluntarily entered.

The appellant does not allege the incompetency of his counsel nor does he charge him with inadequate representa-

tion. The entry of a plea of guilty to murder with a recommendation to mercy by the appellant was in nowise influenced by any improper act or advice of his counsel. The record shows that his employed counsel made a complete investigation of the evidence and heard the testimony that was produced against the appellant and conscientiously advised him of the possible outcome and suggested that he enter a plea of guilty to murder with a recommendation to mercy. It is our conclusion that the appellant was well and adequately represented by an able, competent, efficient and honorable member of the Bar and there is nothing in this record which indicates that he acted otherwise than in good faith or that he was not actuated by a desire to do what he believed to be for the best interest of his client. In this connection, counsel for the appellant in this case stated that in his opinion the appellant had adequate representation at his trial.

The appellant asserts that he entered a plea of guilty to murder with a recommendation to mercy because he was told if he didn't plead guilty he would get the electric chair. We have held that the mere allegation that a lawyer suggested to a defendant that if he stood trial he was in jeopardy of a death sentence does not constitute such coercion as to make the plea of guilty to a lessor offense an involuntary act. It is not only the right but the duty of an attorney in a capital case to discuss and consider with the defendant the possibilty of a death sentence following a trial before a jury. *State v. Liles,* 246 S. C. 59, 142 S. E. (2d) 433. The trial judge has found and the evidence sustains such finding that the guilty plea made by the appellant was voluntary and the result of the appellant's own choice after full disclosure to him by his counsel of the possible result of standing trial.

It is the contention of the appellant that he was not advised of the consequences of his plea to murder with a recommendation to mercy in that the court did not advise him of the punishment which the plea carried and because of such he was not accorded due process of law.

The trial judge has found that there was no evidence presented by the appellant that he did not have the mental capicity to enter a guilty plea. There is no exception to this holding. There is nothing in the record to indicate that the appellant's plea of guilty as aforesaid was not freely and voluntarily entered. Apparently, the appellant's trial counsel and the appellant at the time he entered the plea of guilty were of the opinion, in the light of the fact that he was charged with a capital offense, that the entry of the plea of guilty as aforesaid was to his advantage, and after reviewing the testimony of the original trial we cannot say that this was not the wiser course.

In some jurisdictions, the rule that a trial judge must ascertain whether or not an accused understands the consequence of his plea of guilty before the court accepts it, has been established by statute. *People v. Leach,* 2 Mich. App. 713, 141 N. W. (2d) 377. In other jurisdictions the rule has been established by decisions of the court. In *Commonwealth v. Battis,* 1 Mass. 95, it was held that before the acceptance of a plea of guilty the accused must be admonished as to the consequences of such a plea and must be given a reasonable time to consider what the court has said to him regarding the plea. Since the *Battis* case many courts have declared that a plea of guilty should not be accepted until after careful inquiry by the court into the accused's understanding of the consequences of his plea. *State v. Jones,* 267 Minn. 421, 127 N. W. (2d) 153; *Johnson v. Commonwealth,* 254 Ky. 775, 72 S. W. (2d) 472; *Esker v. State,* 29, Wis. (2d) 212, 138 N. W. (2d) 173. The existence of this duty upon a trial judge is not the universal rule. *Commonwealth ex rel. Crosby v. Rundle,* 415 Pa. 81, 202 A. (2d) 299, Cert. denied 379 U. S. 976, 85 S. Ct. 677, 13 L. Ed. (2d) 567; *People v. Emigh,* 174 Cal. App. (2d) 392, 344 P. (2d) 851; *State v. Padilla,* 2 Ariz. App. 374, 409 P. (2d) 90; *Bogges v. Briers,* 134 W. Va. 370, 59 S. E. (2d) 480: *McGrady v. Cunningham,* 4 Cir., 296 F. (2d) 600, 96 A. L. R. (2d) 1286, Cert. denied 369 U. S. 855, 82 S. Ct. 944, 8 L. Ed. (2d) 14. In the last cited case the

court affirmed a ruling denying relief sought by a *habeas corpus* petition, without a plenary hearing, upon the ground that the judgment on a plea of guilty under the indictment which specified neither the degree of murder charged nor the punishment authorized, and a sentence to life imprisonment, the state's penalty for first degree murder, were valid, although the trial court failed to inquire of the defendant whether he understood the nature of the plea and the punishment that might be inflicted as a result, where he was represented by counsel of his own choice.

In an annotation at 97 A. L. R. (2d) page 552, we find the rule stated as follows:

"The fundamental right of an accused to be informed of the nature of the crime with which he is charged has usually been regarded as including the right to be informed of the consequences of a conviction thereof, and accordingly the courts appear to be in agreement that even in the absence of a statute or court rule directly imposing a duty to advise or admonish the accused as to the consequences of a plea of guilty, the court is required to determine, before receiving a plea of guilty, that the accused does understand the consequences of making such a plea, and to inform him of such consequences *if he is not already advised thereof.*" (Emphasis added.)

The fact that the accused had legal counsel may be a significant factor in determining if he was in fact informed of the consequences of his plea. Here, the appellant had counsel of his own choice and the trial judge has found, and there is no appeal from this finding of fact, that the appellant was informed of the consequences of his plea of guilty to murder with a recommendation to the mercy of the court. It is our view where an accused represented by counsel was sufficiently informed of the consequences of his plea of guilty that no further admonition by the court as to such consequences was necessary, or, at least, that the failure to give such admonition was not prejudicial error.

It is our conclusion that the appellant's petition for a writ of *habeas corpus* was properly dismissed by the trial judge.

Although not argued in this court, we have carefully considered the remaining grounds asserted in the petition for the writ of *habeas corpus,* and find that they are without merit and were properly overruled by the trial judge.

Affirmed.

LEWIS, BUSSEY and BRAILSFORD, JJ., and LIONEL K. LEGGE, Acting J., concur.