**Joe THOMPSON, Petitioner,**

v.

**Ellis C. MacDOUGALL, Director S. C. Department of Corrections, State of South Carolina, Respondents.**

Civ. A. No. 67–334.

United States District Court
D. South Carolina,
Columbia Division.

Sept. 8, 1967.

Edward A. Harter, Jr., Columbia, S. C., Court-appointed counsel for Petitioner.

Daniel R. McLeod, Atty. Gen., Edward B. Latimer, Asst. Atty. Gen., Columbia, S. C., for respondents.

## ORDER

DONALD RUSSELL, District Judge.

Indicted for murder in the Court of General Sessions of Fairfield County, South Carolina, the petitioner, at the urgent insistence of his retained counsel, entered at the September, 1964, term of such Court a plea of guilty, with recommendation to mercy, upon the conclusion of the prosecution's case and without offering any evidence on his own behalf. As a result of such plea, he was sentenced by the Court to life imprisonment and was promptly transferred to the state penitentiary for the service of such sentence.

In March, 1965, he filed in the State Court his petition for a writ of habeas corpus. He based his right to such petition on a number of grounds, the only one of constitutional substance involving the voluntariness of his plea.[1] An evidentiary hearing was had in the State Court, after which an Order denying the writ was entered. On appeal, such denial was affirmed in a full opinion which reviewed in painstaking detail the record in the court below. Thompson v. State (1966), 248 S.C. 475, 151 S.E.2d 221.

After the denial by the State Court, on appeal, of his petition, thereby exhausting his state remedies, the petitioner filed this application on the same grounds presented to the State Court.

Whether the record in the State Court met the requirements of the Fay v. Noia (1963), 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, incorporated into Section 2254, 28 U.S.C.A. by Public Law 89–711, sec. 2, 80 Stat. 1104, enacted November 2, 1966, did not arise since without objection substantial evidence was offered and a new record was made in the proceedings in this Court.

This additional evidence altered in several significant particulars—or at least substantially modified—the testimony in the record before the State Court. Thus, in the earlier State Court proceedings, counsel who represented petitioner in the murder trial had, as the opinion of the South Carolina Supreme Court stated it, "testified that the decision 'to enter that guilty plea was Joe Thompson's and Joe Thompson's alone' and such plea was voluntarily entered." 248 S.C. 480, 151 S.E.2d 223. In fact, at one point in his testimony in such proceedings, counsel characterized petitioner's plea as, "This was a very voluntary act." However, when this same inquiry was directed to such counsel at the hearing in this Court, the answer was:

"This is the question you asked me and I replied to that—you asked me is there any reason to believe it was not voluntary and I said none. *I don't think I should have answered that question that way. It was voluntary in that he did do what we told him to do * * *.*" (Italics added.)

Other testimony of the retained counsel at the hearing in this Court emphasized to a lesser extent the differences in the record here and that previously made in the State Court proceedings on the issue

---

1. It is well-settled that to satisfy constitutional requirements, a guilty plea must be the "reasoned choice" of the defendant himself (United States ex rel. Codarre v. Gilligan, 2d Cir. 1966, 363 F.2d 961, 965); and "is acceptable * * *, only after a searching inquiry to assure that its tender is voluntary" (White v. Pepersack, 4th Cir. 1965, 352 F.2d 470, 472). The fact that his counsel recommended such plea, while not to be lightly dismissed (Williams v. Cox, 10th Cir. 1965, 350 F.2d 847, 849) "is not conclusive" for the defendant "himself must have made a reasoned choice". (United States ex rel. Codarre v. Gilligan, supra, 363 F.2d at p. 965.) That a guilty plea not voluntary and given through ignorance, fear or inadvertence is subject to attack on federal constitutional grounds, see Kercheval v. United States (1927), 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009; Waley v. Johnston (1942), 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302; Anders v. Turner (C.C.A.N.C. 1967), 379 F.2d 46; (decided May 29, 1967); United States ex rel. McGrath v. LaVallee (C.C.A.N.Y.1963), 319 F.2d 308, 311; United States ex rel. Codarre v. Gilligan (C.C.A.N.Y.1966), 363 F.2d 961, 964; Sligh v. State of North Carolina (D.C.N.C.1965), 246 F.Supp. 865, 867.

of voluntariness. For instance, in reply to the question, "Was any question in your mind that he (the petitioner) understood what you told him?", he replied, "There was." Later, when asked whether in his opinion the petitioner had "enough mental capacity to understand what you explained to him?", he stated, "I don't know that. I'm not convinced that he understood he was guilty." Pressed by the respondent whether, in his opinion, the petitioner "knew what he was doing by entering this plea of guilty", such counsel concluded with the statement that "I could not state to you specifically that he did know what he was doing."

Prior to his trial on the murder indictment, the petitioner had been committed to the penitentiary on another offense related to the murder indictment. He was given a mental test at that time. As a result of such test, he was given a mental classification under the Revised Beta I.Q. Test of "69 (Mental Defective)". Again this fact, which a court might find of importance in resolving the constitutional issue, was not before the State Court.

Finally, the record in the State Court proceedings showed that the petitioner admitted that, prior to the entry of his plea, the Trial Judge "asked him 'do you know what you are doing?' and he answered 'Yes'." 248 S.C. 479, 151 S.E.2d 222. However, in the hearing in this Court, the petitioner's counsel at the trial, who had not been interrogated heretofore on this question, contradicted this testimony of the petitioner and testified categorically that the Trial Judge made no inquiry of the petitioner before acceptance of the plea. The testimony of counsel on this point was as follows (pp. 20–21):

"Q. Did you hear Judge Griffith ask him whether or not he knew what he was doing?

"A. I did not. The judge did not— Joe Thompson has said twice that Judge Griffith did say something. I recall very vividly that Judge Griffith did not ask him any question, which I thought was highly unusal * * *."

It is clear that about the only relevant testimony, other than that of the petitioner himself, on the circumstances and voluntariness of his plea is that of his counsel who represented him at his trial. His additional testimony could put in a different light, dependent on how the Court might view it, the constitutional issues resolved by the State Court including, because of his new testimony, the applicability of McGrady v. Cunningham, 4th Cir. 1961, 296 F.2d 600, 602, which was "strictly limited to the facts" in that case and upon which the State Court relied in its conclusions on the question.

█ The record in this Court, as thus enlarged by the testimony taken on hearing, is different from that before the State Court. Whether this new testimony might be considered sufficient to change the conclusions of the State Court, I shall not speculate. It does not appear fair, though, that the decision of the State Court should be reviewed upon a record substantially different from that before such Court. This Court, it would seem, should have, and should exercise, the power to hold in abeyance the present proceeding for a reasonable time to afford the State Court an opportunity to pass on what may well be deemed a new record, presenting the constitutional issues in a new and different factual context.

Indirect support for such action may be found in the rulings in Ralph v. Pepersack (D.C.Md.1962), 203 F.Supp. 752, 754; Ralph v. Brough (D.C.Md.1965), 248 F.Supp. 334, 337–338; Crawford v. Bailey (D.C.N.C.1964), 234 F.Supp. 700, 702; Mezzatesta v. Anderson (C.C.A. Del.1963), 316 F.2d 157, 159; Montez v. Eyman (C.C.A. Ariz. 1967), 372 F.2d 100, 102–103. In the *Mezzatesta* Case, the District Court had dismissed a petition in habeas corpus for failure to exhaust state remedies in reliance upon Darr v. Burford (1950), 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761. Thereafter, the *Darr* Case was overruled by Fay v. Noia (1963), 372 U.S. 391, 83 S.Ct. 822, 9

L.Ed.2d 837. The Circuit Court, under those circumstances, remanded the case to the District Court, observing (316 F.2d p. 159):

"\* \* \* we do not believe we should pass upon the questions raised on this appeal without first affording the court below an opportunity to reconsider the matter in the light of the Noia opinion."

In the *Montez Case*, also a habeas corpus proceeding on behalf of a state prisoner, the State Court had denied the application of the petitioner for a delayed appeal. The District Court construed this denial as "a decision on the merits of such appeal." But the State Court did not have before it a transcript of the proceedings involved when it denied the "delayed appeal" and, the matter involved, could not be resolved except as "viewed in the total context of the trial." For that reason the Court remanded the case to the District Court, with instructions to hold the matter in abeyance for a reasonable time in order to permit the State Court to pass on the issue, stating (372 F.2d p. 103):

"We are reluctant to pass on the merits of appellant's contentions without giving the Supreme Court of Arizona the first opportunity to determine whether appellant was denied due process and a fair trial in the state court proceedings."

By analogy, I feel that the State Court should, since the record has been changed in particulars that it might regard as perhaps significant, be accorded the right to review the petition herein. Such action would accord with the spirit of the decision in Wade v. Peyton, 4th Cir. 1967, 378 F.2d 50, 51, where the Court expressed a proper and becoming deference to the State Courts and the excellent opinion in Tyler v. Croom (D.C.N.C. 1967), 264 F.Supp. 415, 417.

What view the State Court may take of such new evidence I would not anticipate; nor would I intimate an opinion on its effect. That is a matter that I think should, at least initially, be determined by the State Court. I shall accordingly retain jurisdiction herein for a reasonable time in order to afford the Circuit Court, before which this State proceeding was had, an opportunity to review the evidentiary record made in this Court, as it may modify the prior record in that Court, and

It is so ordered.