### 18952

Charles J. BRELAND, Appellant, v. The STATE of S. C., William D. Leeke, Director of The Department of Corrections, and J. J. Thames, Warden of the Wateree River Correctional Institution, Respondents.

(169 S. E. (2d) 604)

*deRosset Myers, Esq.,* of Charleston, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General, and* *Emmet H. Clair, Assistant Attorney General,* of Columbia, *for Respondents,*

August 19, 1969.

LEWIS, Justice.

Petitioner-appellant, Charles J. Breland, has appealed from two orders of the lower court denying relief sought by him in successive petitions for a writ of habeas corpus.

Appellant was indicted for rape at the May 1963 term of the General Sessions Court for Charleston County. The penalty for rape is death unless a jury recommends mercy, in which event the punishment is a term not exceeding forty years nor less than five years, at the discretion of the presiding judge. Section 16-72, 1962 Code of Laws. At the time of the disposition of appellant's case, Section 17-553.4 of the Supplement to the 1962 Code of Laws permitted the court to accept a plea of guilty in lieu of a recommendation of mercy by a jury, which reduced the punishment to a term of years instead of death. Appellant pled guilty to the charge of rape on September 9, 1963. The trial judge accepted the plea in accordance with the provisions of Section 17-553.4 and imposed a sentence of twenty one years.

Subsequently, appellant filed a petition for a writ of habeas corpus under date of March 18, 1966, in which he contended that his present confinement in the South Carolina State Penitentiary under the aforesaid sentence was illegal because he was not competently represented by coun-

sel, a statement made by him to the officers was illegally obtained, and his plea of guilty was involuntarily entered. After a hearing on October 27, 1966, an order was issued approximately four months later, on February 16, 1967, denying the relief sought.

After the last mentioned order was filed, Section 17-553.4, under which appellant's plea of guilty was accepted, was declared unconstitutional, as placing an impermissible burden on the constitutional right of a defendant to a jury trial, under the rule announced by the United States Supreme Court in *United States v. Jackson,* 390 U. S. 570, 88 S. Ct. 1209, 20 L. Ed. (2d) 138. *State v. Harper,* 251 S. C. 379, 162 S. E. (2d) 712.

Following our decision in Harper, appellant filed another habeas corpus petition in which he contended that his plea of guilty should be set aside on the further ground that it was entered under the coercive effect of Section 17-553.4 which had been declared unconstitutional. A hearing was held on this petition on October 21, 1968 and the relief sought was denied under an order issued January 17, 1969, approximately three months later.

The appeals from the foregoing orders were consolidated and will be considered together. They present, basically, two questions for determination, to wit: (1) was appellant's plea of guilty voluntarily entered and, (2) did any delay in the issuance of the orders by the lower court affect their legality? Included in the first question is whether appellant was competently represented by his court-appointed counsel.

In approaching a determination of the voluntariness of appellant's plea, we must examine the basis of our holding in Harper that Section 17-553.4 was unconstitutional, and its legal effect upon the plea.

Following the decision of the United States Supreme Court in Jackson, we held Section 17-553.4 unconstitutional since its impermissible tendency was to coerce a defend-

ant into waving a jury trial and entering a plea of guilty solely in order to avoid the death penalty. The evil condemned in the Federal statute; involved in *Jackson,* and Section 17-553.4, involved in *Harper,* "is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them." *Jackson* further stated: "A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right. Thus the fact that the Federal Kidnapping Act tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily."

The vice condemned in Section 17-553.4 was that it inevitably "discourage(d) assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." *Jackson, supra.* Nowhere in *Jackson* or *Harper* is it held that the *inevitable* result of the statutes involved is to make every plea entered under the statutes coerced and involuntary. Therefore, the mere fact that appellant's plea was taken in accordance with the provisions of Section 17-553.4, subsequently declared unconstitutional, did not automatically under *Jackson* and *Harper* make the plea coercively entered as a matter of law. Rather the question remains in each case whether the plea was coerced or encouraged by the death penalty power in the jury in the event of a trial.

The foregoing interpretation was placed upon *Jackson* by the Fourth Circuit Court of Appeals in *Alford v. State of North Carolina,* 405 F. (2d) 340. The court stated at page 347 of the opinion:

"We think that a defendant who has pleaded guilty when charged with a capital offense in North Carolina is not necessarily entitled to post-conviction relief as a matter of law. Jackson by defining what are the impermissible

burdens of a statutory scheme like that of North Carolina must be read, however, to hold that a prisoner is entitled to relief if he can demonstrate that his plea was a product of those burdens—specifically, that his principal motivation to plead guilty or to forego a trial by jury was to avoid the death penalty. Jackson thus defined a new factor to be given weight in determining the voluntariness of a plea * * *. As we read Jackson, we must determine the extent to which, if at all, petitioner was moved to plead guilty because of the incentive which the North Carolina statutory scheme supplied to achieve that result."

The question then is whether, under all of the facts and circumstances, appellant's guilty plea was voluntarily entered, considered in the light of the alleged coercive tendency of Section 17-553.4.

While much stress is made in argument that appellant's plea of guilty was entered because of the fear that, if he went to trial, he might receive the death penalty, it is readily apparent that such position is based to a considerable extent upon the contention that Section 17-553.4 was held in *Jackson* and *Harper* to have such coercive effect as a matter of law. Our construction of the effect of the holding in those cases rejects such contention.

The main thrust of appellant's contention that his plea was involuntarily entered is his claimed misapprehension as to the nature of the offense embraced in the plea. He testified that he knew he was signing a plea of guilty but thought that he was entering a plea to accessory after the fact. of rape and not to rape with a recommendation to mercy. He stated that his attorneys told him that the maximum sentence for accessory after the fact was five years and that with his good record he would get "either no time at all or even get probation." He testified as follows as to his reason. for pleading guilty: "I knew they (his attorneys) had conferred with me before coming in and they told me I was pleading guilty to accessory after

the fact and that's why I plead guilty, *and for that reason only,* is why I plead guilty to it." (Emphasis added).

In addition to appellant's own testimony, the other facts and circumstance show that the fear of the death penalty did not deter him from a trial, but rather that his plea was entered solely because of the claimed representation to him by his counsel that he would not have to serve any time if that course was pursued. We agree with the lower court that neither contention has convincing support in the record.

Appellant is a high school graduate, married, and, at the time of the commission of the alleged crime, had been employed as an agent for a life insurance company for several years. He (age twenty-six), Johnny C. Jeffords (twenty), and Bobby J. Avery (eighteen) were jointly charged with having committed the crime of rape on April 18, 1963 upon a fifteen year old girl. It appears that on the evening the three had been drinking and riding around in the appellant's automobile. About 10 o'clock P.M., they passed a parked vehicle in which the prosecutrix was seated alone. After they returned to the parked vehicle, the prosecutrix was forced into appellant's automobile and subsequently was raped by Jeffords and Avery. Appellant, while clearly present, aiding and abetting in the commission of the crime, denied that he had intercourse with the prosecutrix. An officer, apparently searching for the men, came upon the scene where appellant's car had been parked. Upon recognizing the officer, appellant, Jeffords, and Avery ran, leaving the prosecutrix who was at that time completely unclothed. After a subsequent search by the officers, with the aid of bloodhounds, all were apprehended and taken to the Charleston County jail. Upon questioning by the officers, the participants gave written statements in the nature of confessions and were charged with rape. No exception on appeal challenges the finding of the lower court that the statement made by appellant to the officers was freely and voluntarily made.

Within a few days after his arrest, appellant interviewed attorneys for the purpose of retaining their services. When he was unable to employ them, those attorneys with others were appointed by the court to represent him and his codefendants. After a thorough investigation of the facts and conferences with the prosecuting attorney, these attorneys concluded that all of the defendants should plead guilty to rape with a recommendation to mercy, and so recommended to them. Jeffords and Avery accepted the recommendation but appellant refused to do so, stating that he wanted a trial. When appellant elected to plead not guilty and stand trial, the attorneys, who had been appointed to represent all of the defendants, were relieved of their representation of appellant because of a possible conflict of interest and other attorneys were appointed to represent him.

The attorneys last appointed to represent him made a thorough investigation of the facts and ultimately reached the same conclusion as the attorneys first appointed, that is, that appellant should enter a plea of guilty to rape with a recommendation to mercy. Thereafter, numerous conferences were held by them with appellant resulting in his agreement to enter a plea of guilty.

Appellant's attorneys testified that the nature of the plea was fully explained to him and they deny that he was ever told by them that he was entering a plea to accessory after the fact or that he was told by them that he would not have to serve time. Certainly the record reveals no facts upon which such offense could be based. Apparently appellant originally thought that his failure to have intercourse with the prosecutrix made him not guilty of rape. His attorneys correctly explained to him that, although intercourse was absent, still the fact that he was present, aiding and abetting in the commission of the crime made him guilty as a principal. Legal texts were carried to appellant so that he could read for himself the applicable legal principle. Following such explanation, he entered a plea of guilty. He

signed the plea to rape with recommendation to mercy and it was published in open court in his presence. His plea was entered on September 9, 1963 and he was sentenced one week later, on September 16, 1963. At the time of the entry of the plea, appellant's attorney stated to the court, in appellant's presence: "As I understand it from the Solicitor, there is no specific charge as an accessory in a rape charge. He has to plead to the principal crime and we would like the record to reflect that he is an accessory in that he aided and abetted the crime." This was followed by the statement of the Solicitor to the court that "although defendant Breland pleads guilty to rape, he did not physically rape the girl. He is pleading to aiding and abetting the other two defendants in the consummation of the crimes." The foregoing was followed one week later by the pre-sentence hearing at which opportunity was afforded to present any matter which might affect the sentence. At no time was any disagreement voiced as to the nature of the plea entered by appellant.

The attorneys appointed were able and experienced. They diligently and capably investigated the matter and advised him in the light of the factual realities found to exist. There is no fact or circumstance in this record to support the allegations of incompetency or inadequacy in their representation of him.

The present claim of appellant that he was under a misapprehension as to the nature of his plea is based solely on statements allegedly made to him by his counsel. There is no charge that he was misled by any statement in this regard by any officer or the court. In the light of the clear statements made by his counsel to the court as to the plea entered by him, appellant's present testimony as to what his counsel told him in private conferences preceding the plea is unconvincing to say the least.

The record also fails to sustain the claim that the plea was coercively entered. The fact that appellant's counsel weighed the chances of the imposition of the death penalty

in the event of trial and advised him accordingly does not render the plea involuntary. Certainly a defendant faced with a charge involving the death penalty is not to be told that he can not consider under any circumstances the possibilities of receiving such sentence in the event of trial and availing himself of the opportunity to avoid such result. No man would be so unwise as to ignore the consequences which might follow a determination of guilt and no court of justice would attempt to compel him to do so.

This record reveals a painstaking investigation of the facts by the attorneys appointed to represent appellant. Under the facts as revealed in the voluntary statements of appellant and his codefendants, counsel would have been derelict in their duty if they had not advised their client that such facts made him a principal in the crime. Confronted with overwhelming proof of guilt, consideration of the penalties that might fall was naturally impelled. Although appellant was reluctant to plead guilty, there is nothing in this record to indicate other than that his decision to do so was the result of a considered judgment based upon the advice of competent and experienced counsel, in the light of the existing facts and circumstances. His plea was not coerced but voluntarily and understandingly entered.

We are convinced, as was the lower court, that appellant was aware that he was pleading guilty to the crime of rape; that he was in fact a principal in the crime; that the plea was not coerced; that he was competently represented by able counsel; and that he was aware of the consequences of the plea and the possible sentence which might be imposed.

The last question concerns appellant's contention that the delay in filing the orders by the trial judges rendered such orders illegal and had the effect of entitling him to his release.

Appellant relies upon Article 5, Section 17, of the South Carolina Constitution, which provides: "It shall be * * *

the duty of the Judges of the Circuit Courts to file their decisions within sixty days from the rising of the last Court of the Circuit then being held."

Assuming, as argued by appellant, that the orders in question were not filed within the prescribed time, such would not affect their validity.

The question here involved was considered in the cases of *Koon v. Munro,* 11 S. C. 139 and *Griffith v. Cromley,* 58 S. C. 448, 36 S. E. 738. In disposing of the issue, the court held that no penalty is provided in the constitutional provision and it was not intended to affect the validity of a judgment filed after the sixty day period.

Affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD, and LITTLEJOHN, JJ., concur.