## 19081

Albert SANDERS, Appellant, v. William D. LEEKE, Director, South Carolina Department of Corrections and The State of South Carolina, et al., Respondents.

(175 S. E. (2d) 796)

*Ralph K. Anderson, Jr., Esq.,* of Florence, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Emmet H. Clair,* and *John P. Wilson, Assistant Attorneys General,* of Columbia, *for Respondents,*

July 17, 1970.

Moss, Chief Justice.

This is an appeal, *in forma pauperis,* from an order of the Circuit Court dismissing a writ of *habeas corpus* and remanding the prisoner, Albert Sanders, the appellant herein, to the custody of the South Carolina Department of Corrections, where he is presently serving a sentence of fifty years, imposed upon him in Marion County, on February 22, 1967.

The grand jury of Marion County, at the 1965 October Term of the Court of General Sessions, by separate indictments, charged the appellant with the murder of Carrie Nichols Evans and Mert Evans, such being his mother-in-law and father-in-law.

The appellant was brought to trial on February 21, 1967, on the indictment charging him with the murder of Carrie Nichols Evans. After the State had presented its entire case and the appellant had offered one witness and had testified himself, he withdrew his plea of not guilty and tendered a plea of guilty to manslaughter upon each of the aforesaid indictments, being represented at the time by his retained counsel.

Thereafter, on December 20, 1968, the appellant filed a petition for a writ of *habeas corpus,* alleging that his detention and restraint under the aforesaid sentence was unlawful and in violation of his constitutional rights guaranteed under State and Federal Constitutions. The appellant relied upon several grounds and asserted all were in violation of his constitutional rights entitling him to an absolute release from custody.

In this *habeas corpus* proceeding the appellant was represented by court appointed counsel. He was accorded a full hearing and the testimony of the appellant and that of his former retained counsel and the solicitor was presented. During the course of the hearing before the Circuit Court, counsel for the appellant amended the *habeas corpus* petition

to ask for a new trial, in the alternative, based upon the same grounds that were originally alleged.

The trial judge, on October 1, 1969, issued his order finding and concluding that the appellant had not established that he was denied any of his constitutional rights and was entitled to no relief. It is from this order that the appellant prosecutes this appeal.

The first question for determination is whether the appellant's plea of guilty to the charge of manslaughter, on each of the indictments, was made freely, voluntarily and with a full understanding of the meaning and the consequences thereof. In considering this question, it should be borne in mind that where a person seeks relief by a writ of *habeas corpus,* the burden is upon him to prove the allegations of his petition by a preponderance of the evidence. *Thompson v. State,* 251 S. C. 593, 164 S. E. (2d) 760. The trial judge found that the pleas of guilty by the appellant were voluntary and made with a proper understanding of the meaning and consequences thereof.

A plea of guilty is a confession of guilt, made in a formal manner and has the same effect in law as a verdict of guilty and authorizes the imposition of the punishment prescribed by law. A plea of guilty must be freely and understandingly made. A plea of guilty, if induced by promises which deprive it of the character of a voluntary act, is void and should be set aside. *Bailey v. MacDougall,* 247 S. C. 1, 145 S. E. (2d) 425.

Whether pleas of guilty are freely and voluntarily made, with full understanding as to their meaning and effect, is necessarily a factual question. We must look at the evidence for the answer.

When the appellant announced through his attorney that he wished to withdraw his plea of not guilty and enter a plea of guilty to manslaughter on each of

the indictments, the trial judge personally conducted an examination of the appellant, with a stenographic record thereof being made by a court reporter, to determine whether the plea was being made voluntarily and with understanding of the nature of the charge and the consequences thereof. The appellant was told by the presiding judge that he could be sentenced in each case for not less than two nor more than thirty years and that such sentence could run consecutively with the maximum sentence being sixty years. The appellant admitted that he understood what the sentence could be. He was asked if there was anything he did not understand about his pleas, to which he replied, "No, sir." The appellant stated in open court, "I understand everything, and I am guilty." Counsel representing the appellant told the court that the appellant understood the possible punishment that he could receive. The trial judge, after an examination of the appellant in open court, concluded that the pleas of guilty were voluntarily and understandingly made, and based upon such determination he accepted the tendered pleas. The appellant, under the indictment charging him with the killing of Carrie Nichols Evans, was sentenced to serve a term of thirty years, and in the other case involving the killing of Mert Evans he was sentenced to serve a term of twenty years, this sentence to run consecutively with the first sentence, or making a total sentence of fifty years.

At the *habeas corpus* hearing, the appellant testified that after he had completed his testimony he was taken into a room behind the judge's bench by the solicitor and his attorney, and was told by the solicitor that if he was convicted he would get the death penalty. The appellant testified that his attorney agreed with this statement. He testified that the case was further discussed and he made the statement that he would not change his plea. After the solicitor had left the room, the appellant and his attorney further discussed the case and he was told by his attorney, "I am here to represent you and I will represent you in any way you see fit," and "that he would represent me whether I

pleaded guilty or not guilty—that was left entirely to me."
He said that when he left the room he announced that he
would plead guilty, giving as his reason that he was afraid
that he would get the death penalty if he did not change his
plea. When the appellant was cross examined, with reference
to whether he should enter a plea of guilty or not, he said
that his attorney advised him, "Al, its left to you what you
do." When examined by the judge at the *habeas corpus*
hearing, the records reveals the following:

"The Court: You don't contend that Mr. Summerford
forced you to plead to anything?

"A. If I was guilty, sir,—(interruption).

"The Court: Just answer my question: did he force you
to plead?

"A. He didn't have no way of forcing me, but he threat-
ened me.

"The Court: How?

"A. By telling me I would get the chair if I changed my
plea.

"The Court: And he said that without any qualification?

"A. Yes, sir.

"The Court: And Mr. Tyndall didn't force you to plead?

"A. No, sir, neither one forced me.

"The Court: As I understand you he said it was entirely·
up to you?

"A. Yes, sir, entirely up to me what I did.

"The Court: Whether you plead to manslaughter or got
on with the jury trial?

"A. Yes, sir."

The solicitor, T. Kenneth Summerford, was called as a
witness. He testified that after the State had completed its
testimony and the defense had offered two witnesses, that
he conferred with the attorney for the appellant. The sole
purpose of the conversation was to determine whether the
State would accept a plea of guilty to manslaughter. He
further testified that he never threatened the appellant in

any manner. He also testified that the case was a very serious one and he was ready to go forward with the trial and it was his opinion that the jury, upon the evidence that had been produced, could have convicted the appellant of murder with or without recommendation to mercy. We call attention to the fact that after a plea of guilty to manslaughter had been accepted by the court and the trial jury returned to the courtroom they were advised that in their absence the defendant had withdrawn his plea of not guilty and entered a plea of guilty to manslaughter, and the trial judge, evaluating the testimony, said:

"I am sure the best day's work that this man ever had done for him was to take the advice of his attorney and enter this plea. Because you could very easily have found him guilty of murder without recommendation, which would have meant electrocution, and I would not have set it aside. I would not have. Because from the testimony I heard, he just killed these two people for absolutely no reason on earth."

M. C. Tyndall, the retained counsel for the appellant, was called as a witness and testified that after the State had completed its testimony and the defense had offered two witnesses, the court was recessed. He and the appellant repaired to a room in the courthouse and privately discussed at length the case as it had developed. The attorney then advised the appellant that if he was found guilty of murder without recommendation to mercy he would get the death penalty and if he was recommended to mercy he would get life imprisonment. He discussed with the appellant the possible sentence that he would receive in the event he entered a plea to manslaughter. After the solicitor had agreed to accept the plea of guilty to manslaughter, the attorney told the appellant that the sentence would be a substantial one but never represented to him what the sentence would be. He further testified that after discussing the various possibilities that he left it up to the appellant, telling him that he would represent him whether he entered a plea of guilty to

manslaughter or went forward with the trial. The attorney testified that the appellant had heard all of the State's witnesses and had this to help guide him in deciding whether or not to plead guilty to manslaughter or proceed with the trial. The attorney testified that following all of the discussions, the appellant made the decision to enter his plea of guilty to manslaughter. The witness also testified that neither he nor the solicitor threatened the appellant with the possibility of the death sentence.

We are convinced, as was the lower court, that the plea of guilty by the appellant to the charge of manslaughter was freely, voluntarily and understandingly made and he was aware at the time of the consequences of the plea and the possible sentence which might be imposed. Even though the appellant may have been reluctant to plead guilty to manslaughter there is nothing in this record to indicate other than that his decision to do so was a result of a considered judgment based upon the advice of competent and experienced counsel, in the light of existing facts and circumstances.

The appellant asserts that he entered the plea of guilty to manslaughter because he was told if he didn't plead guilty he would get the death sentence. We have held that a mere allegation that a lawyer suggested to a defendant that if he stood trial he was in jeopardy of a death sentence does not constitute such coercion as to make the plea of guilty to a lesser offense an involuntary act. It is not only the right but the duty of an attorney in a capital case to discuss and consider with the defendant the possibility of a death sentence following a trial before a jury. *Thompson v. State,* 248 S. C. 475, 151 S. E. (2d) 221.

Appropriate to the question under discussion is what we said in the case of *Breland v. State,* 253 S. C. 187, 169 S. E. (2d) 604, as follows:

"The record also fails to sustain the claim that the plea was coercively entered. The fact that appellant's counsel weighed the chances of the imposition of the death penalty

in the event of trial and advised him accordingly does not render the plea involuntary. Certainly a defendant faced with a charge involving the death penalty is not to be told that he can not consider under any circumstances the possibilities of receiving such senetnce in the event of trial and availing himself of the opportunity to avoid such result. No man would be so unwise as to ignore the consequences which might follow a determination of guilt and no court of justice would attempt to compel him to do so."

We next consider the contention of the appellant that his plea of guilty was involuntary because of his fear of receiving a death sentence if he had risked a jury trial by a plea of not guilty. He argues that this was an inherently coercive factor which necessarily deprived him of freedom of choice in making his plea, thereby imposing an impermissible burden upon his exercise of his Fifth and Sixth Amendment rights under the Federal Constitution.

In the recent case of *Brady v. United States,* 397 U. S. 742, 90 S. Ct. 1463, 25 L. Ed. (2d) 747, decided May 4, 1970, Brady was charged with kidnapping in violation of 18 U. S. C., Section 1201(a), and faced a maximum penalty of death if the verdict of the jury should so recommend. Brady first elected to plead not guilty and, thereafter, changed his plea to guilty. Such plea was accepted by the trial judge after he twice questioned him as to the voluntariness of his plea. Thereafter, Brady sought relief claming that his plea of guilty was not voluntarily made because Section 1201(a), with its potential death penalty, operated to coerce his plea. Brady contended that under the rule announced in *United States v. Jackson,* 390 U. S. 570, 88 S. Ct. 1209, 20 L. Ed. (2d) 138, required the invalidation of every plea of guilty entered under the aforesaid section, at least when the fear of death is shown to have been a factor in the plea. The court, in rejecting the contention advanced by *Brady,* said:

"* * * We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment when-

ever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."

The reason for and the rationale of the foregoing holding of the court is as follows:

"The issue we deal with is inherent in the criminal law and its administration because guilty pleas are not constitutionally forbidden, because the criminal law characteristically extends to judge or jury a range of choice in setting the sentence in individual cases, and because both the State and the defendant often find it advantageous to preclude the possibility of the maximum penalty authorized by law. For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious—his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantages—the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof. It is this mutuality of advantage which perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury.

"Of course, that the prevalence of guilty pleas is explainable does not necessarily validate those pleas nor the system which produces them. But we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant

who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind which affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary.

"A contrary holding would require the States and Federal Government to forbid guilty pleas altogether, to provide a single invariable penalty for each crime defined by the statutes, or to place the sentencing function in a separate authority having no knowledge of the manner in which the conviction in each case was obtained. In any event, it would be necessary to forbid prosecutors and judges to accept guilty pleas to selected counts, to lesser included offenses, or to reduced charges. The Fifth Amendment does not reach so far."

In the case of *Parker v. North Carolina,* 397 U. S. 790, 90 S. Ct. 1458, 25 L. Ed. (2d) 785, decided by the United States Supreme Court on May 4, 1970, agreeable with the decision in *Brady,* it was held that an otherwise valid plea is not involuntary because induced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial.

The question regarding whether a guilty plea is voluntary or involuntary, when allegedly entered solely to avoid the possibility of the death sentence, is not one of first impression in this State, as this issue was duly considered in our case of *Breland v. State,* 253 S. C. 187, 169 S. E. (2d) 604, and our resolve of such question conforms to the treatment accorded such issue in the aforementioned *Brady* and *Parker* cases.

The question of whether there may be a plea of guilty to manslaughter under an indictment for murder has been answered in the affirmative in the case of *State v. Phillips,* 226 S. C. 297, 84 S. E. (2d) 855. Therefore, the contention that it was incumbent upon the

State to change the indictments for murder to that of manslaughter prior to accepting appellant's guilty plea is without merit because an indictment charging murder includes the charge of manslaughter.

Even though the appellant's plea of guilty to manslaughter may have been motivated in part by a desire to avoid a possible death penalty or a life imprisonment sentence, such plea under the record here was voluntarily and intelligently made with adequate advice of competent counsel. The plea so made was coupled with the appellant's unequivocal admission, in open court, that he was guilty of the crime of manslaughter to which he was entering a plea of guilty.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.